UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| A. S. A MINOR, B/N/F JAMES SNIDER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>REMINGTON ARMS COMPANY, LLC., )<br>ARMSCOR PRECISION INTERNATIONAL )<br>d/b/a ROCK ISLAND ARMORY, )<br>ARMS CORPORATION OF THE )<br>PHILIPPINES, )<br>)<br>Defendants. ) | No. 1:17-cv-01890-JPH-TAB |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

A.S. alleges he was injured when a .22 caliber shell exploded while he was firing a rifle. He sued Defendants alleging that a defect in the rifle, the ammunition, or both, caused his injuries. Dkt. 28. Defendants moved for summary judgment. Dkt. [68]; dkt. [79]. Because A.S. has not shown that his injuries were proximately caused by a defect in either Defendant's product, their motions are **GRANTED.**

# I.
# Facts and Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to A.S. and draws all reasonable inferences in his favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

On October 2, 2016, A.S. went to his aunt and uncle's house to practice firing his Remington-manufactured rifle using Armscor ammunition. Dkt. 68-2

1

at 12:15-21, 18:24-19:2; dkt. 28 ¶ 1; dkt. 69 at 1 n.1. After firing several dozen rounds, dkt. 68-3 at 43:1-13, A.S. pulled the trigger and immediately felt heat on his face, dkt. 68-2 at 40:12-22. Afterward, his eye was irritated. Dkt. 68-2 at 41:9-11. His father took him to the hospital "to see if there was anything wrong." *Id.* at 45:13-15. After seeing the doctor for about an hour, A.S. was discharged and was told to use eye drops for his eye pain and an ice pack for his face. *Id.* at 49:13-24. A.S. continues to suffer from dry eyes. *Id.* at 76:1-13.

On March 17, 2017, A.S. sued Remington Arms Company, LLC—the rifle manufacturer—and Armscor Precision International and Arms Corporation of the Philippines—the ammunition manufacturer. Dkt. 1-1. Remington removed the case to this Court, dkt. 1, and filed a motion for summary judgment, dkt. 68. Armscor also filed a motion for summary judgment. Dkt. 79.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In

ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). Indiana substantive law governs this case. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019).

## III.
## Analysis

A.S. alleges that his injuries were caused by a defect in the rifle, the ammunition, or both. Dkt. 28. Defendants have moved for summary judgment. Dkt. 68; dkt. 79.

### A. The Indiana Products Liability Act

The Indiana Products Liability Act ("IPLA") governs all actions "(1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product." Ind. Code § 34-20-1-1. The IPLA therefore applies to all of A.S.'s claims regardless of the legal theory. Dkt. 83 at 4; *Robinson v. Davol Inc.*, 913 F.3d 690, 693 (7th Cir. 2019). The Court must apply the IPLA by doing its "best to predict how the Indiana Supreme Court would decide" the issues. *Webber*, 923 F.3d at 482.

To establish liability under the IPLA, a plaintiff must show that "'(1) he or she was harmed by a product; (2) the product was sold 'in a defective condition unreasonably dangerous to any user or consumer'; (3) the plaintiff was a foreseeable user or consumer; (4) the defendant was in the business of selling the product; and (5) the product reached the consumer or user in the condition

it was sold." *Piltch v. Ford Motor Co.*, 778 F.3d 628, 632 (7th Cir. 2015); Ind. Code § 34-20-2-1. A plaintiff must also "prove that his injuries were proximately caused" by a defect in the product or a breach of a duty to design a safe product. *Piltch*, 778 F.3d at 632 (citing *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007)).

**B.     Establishing Causation Requires Expert Testimony**

Occasionally, causation is obvious to even a lay person, so a plaintiff can establish causation without expert testimony. *Dalton v. Teva N. Am.*, 891 F.3d 687, 691 (7th Cir. 2018). For example, "when a plaintiff suffers from a broken leg or a gash when hit by a vehicle, he doesn't need to produce expert testimony." *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 702 (7th Cir. 2015) (quoting *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010)). But expert testimony is required to establish causation "when the issue is not within the understanding of a lay person." *Piltch*, 778 F.3d at 632.

In *Piltch*, motorists sued their car's manufacturer under the IPLA after they were involved in a car accident and the airbags did not deploy. *Id.* at 631-32. Affirming summary judgment for the manufacturer, the court held that even if the motorists had established a defect in the product, "without expert testimony, a lay juror could not distinguish between the injuries caused by the collision and the enhanced injuries caused by the air bags' failure to deploy without engaging in pure speculation." *Id.* at 634.

Similarly, in *Dalton*, a patient brought a claim under the IPLA after her Intrauterine Device broke during extraction. 891 F.3d at 689. The district

4

court granted summary judgment for the defendant because the plaintiff did not have expert testimony to establish causation. *Id.* The Seventh Circuit affirmed, holding that the cause of the patient's injury was not obvious, so she "could not prove her tort claims without expert testimony." *Id.* at 692. The court reasoned that when a juror must engage in "'pure speculation' to find causation, then expert evidence is necessary under Indiana law." *Id.* at 691.

Here, A.S. does not argue that causation is obvious but concedes that expert testimony is necessary for the claims to survive summary judgment.

### 1. Expert Testimony about the Rifle

A.S. argues that a report from John Nixon demonstrates that a defect in the rifle caused the injury. Dkt. 76 at 5. Mr. Nixon performed various tests on the gun, the ammunition, and the ruptured cartridge that was found in the rifle immediately after the incident. Dkt. 68-4; dkt. 68-5. He stated that the ruptured cartridge found in the rifle's chamber "was subjected to high chamber pressure while being partially outside of the chamber area (i.e. unsupported)" when A.S. fired it. Dkt. 68-4 at 2. Based on that finding, he concluded that "[w]hatever the cause of the case failure and resulting injury it is evident that the rifle and/or ammunition did not perform as the designers and suppliers intended." *Id.*

Mr. Nixon's report does not conclude that a defect in the rifle caused A.S.'s injuries. He opines about what *may* have caused the cartridge to rupture, stating it "may have been due to an oversized chamber, a hangfire, a rifle that will fire out of battery, or a combination of those conditions." *Id.* But

5

he offers nothing more than that speculation about what caused the products to fail. *Id.* ("additional testing . . . may help to identify the cause of the failure"). In total, the report offers little insight into what caused A.S.'s injuries.

A.S. argues that this report establishes that the rifle was defective because Mr. Nixon said that the rifle fired out of battery. Dkt. 76 at 7-8. But Mr. Nixon concluded that the rifle "may have" fired out of battery. Dkt. 68-4 at 2. And even if the rifle fired out of battery, that does not create a triable issue of fact on causation. Mr. Nixon does not opine *why* the rifle fired out of battery—only that a defect *allowed* the rifle to fire out of battery. *See* dkt. 68-4 at 2; dkt. 68-5 at 4  Proximate cause requires more. *See Coffman v. PSI Energy, Inc.*, 815 N.E.2d 522, 527 (Ind. Ct. App. 2004) (explaining that proximate cause requires a "natural and probable consequence" that "should reasonably have been foreseen and anticipated"). If a defect merely allowed the rifle to fire out of battery—and incorrect use, or debris, or another reason independent of that defect was then required for it to actually fire out of battery—then that would not support proximate cause.[1] *See Flueckiger v. Englehardt*, 89 N.E.3d 1119, 1121 (Ind. Ct. App. 2017) ("To be considered the proximate cause of [an] injury, the [defect] must have set in motion a chain of circumstances which in natural and continuous sequence lead to the resulting injury.").

---

[1] A defect allowing the rifle to fire out of battery may support "but for" cause, but the standard under IPLA is proximate cause. *See Florio v. Tilley*, 875 N.E.2d 253, 256 (Ind. Ct. App. 2007) ("'But for' is rarely an adequate notion of cause.").

6

Because Mr. Nixon does not identify a defect that could actually cause the rifle to fire out of battery, a jury considering his report could not find that a defect caused A.S.'s eye injury without engaging in pure speculation. *Dalton,* 891 F.3d at 691. Therefore, A.S. has failed to designate evidence allowing a jury to find that a defect in the rifle caused his injury. *See id.*

### 2. Expert Testimony about the Ammunition

A.S. argues that Kris Carson's report demonstrates that a defect in the ammunition caused the injury. Dkt. 83 at 4. To demonstrate that a defect in the ammunition caused the injuries, A.S. designated a document prepared by Remington's Director of Product Affairs, Kris Carson. Dkt. 101. Mr. Carson concluded that the rifle involved in the incident had no design or manufacturing defects. *Id.* at 23-24. Instead, he said that the Armscor ammunition contained either too much propellant or an improper primer mix, which created excessive pressure in the cartridge, causing the shell to rupture and release gas. *Id.* at 24.

Expert evidence designated on summary judgment must be admissible under Federal Rule of Evidence 702. *Gopalratnam v. Hewlett-Packard Co.,* 877 F.3d 771, 778-79 (7th Cir. 2017); *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 704 (7th Cir. 2009).[2] The first requirement for admissibility—which the proponent bears the burden of proving by a preponderance of the evidence—is

---

[2] District courts are the "evidentiary gatekeeper, ensuring that an expert's testimony rests on a reliable foundation." *Gopalratnam,* 877 F.3d at 778. Therefore, as *Lewis* explained, district courts "may consider the admissibility of expert testimony *sua sponte.*" 561 F.3d at 704. The Court exercises that discretion here.

7

that the witness is qualified as an expert.  *Gopalratnam,* 877 F.3d at 779, 782. Proof of qualifications typically includes years of experience, training, publications, degrees, work history, professional affiliations, and other indicia of expertise.  *See e.g., Hall v. Flannery,* 840 F.3d 922, 928 (7th Cir. 2016).  If the proponent does not establish qualifications, the expert's report is not considered on summary judgment.  *See Lewis,* 561 F.3d at 704; *Higgins,* 794 F.3d at 705.

Here, A.S. has not established that Mr. Carson is qualified to give expert testimony on the cause of A.S.'s injury or any other subject.  His report is devoid of any references to his qualifications, and does not explain why Mr. Carson is qualified to act as an expert in this matter. *Id.*  Mr. Carson does not claim to be an expert anywhere in the report. *Id.*  Mr. Carson's report is labeled "expert report" on the first page, *id.* at 1, but that is not enough, *see United States v. Lanzotti,* 205 F.3d 951, 956 (7th Cir. 2000) (affirming district court's decision not to allow an expert to testify after the proffering party "did not provide the court with any information regarding [the expert's] resume, curriculum vitae, or credentials that would qualify him as an expert").  The report therefore cannot create a triable issue of fact on causation.

But even if Mr. Carson were a qualified expert, his report does not establish that a defect in the ammunition caused A.S.'s injury.  Mr. Carson concluded that the ammunition ruptured because it was subject to excessive pressure.  Dkt. 101 at 17, 21-22.  When the ammunition was fired, this excessive pressure "allowed gases to escape." *Id.* at 17-18, 24.  But his report

8

says that gases are released even when ammunition is fired under normal conditions. *Id.* at 6. The report does not say that the gases released would have been different than under normal conditions, or that any differences could affect the person firing the rifle. In fact, his report concludes that the "abnormally high pressure" caused the case to rupture, but the rifle "was designed in such a manner to withstand pressures exhibited during the reported incident." *Id.* at 22. Nowhere does the report say that that any gas "blowback" could affect the person firing the rifle or that the gas released from the ruptured ammunition could cause injury. *See id.* at 12, 17, 22-24.

Whether the gases released here were excessive enough to injure A.S. is "not within the understanding of a lay person," *Piltch,* 778 F.3d at 632, and Mr. Carson's report does not demonstrate that the gases released here were so excessive that they caused A.S.'s injury. Without this conclusion, a jury would have to speculate as to whether the gases released here were enough to cause A.S.'s injury.

\*   \*   \*

In sum, for Defendants to be liable for A.S.'s injuries, A.S. must demonstrate that defects in their products proximately caused the injuries. *Id.* Since it isn't obvious what caused A.S.'s injuries here, an expert is needed to establish this causal link. *Id.* A.S. failed to designate any qualified expert who stated that a defect in either the rifle, or the ammunition, or both caused his

9

injuries. Without that evidence, no reasonable juror could conclude that A.S. has met his burden of establishing a claim under the IPLA.[3]

## IV.
## Conclusion

Defendants' motions for summary judgment are **GRANTED**. Dkt. [68]; dkt. [79]. Remington's motions to exclude testimony, dkt. [86]; dkt. [88], are **DENIED as moot**. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 3/16/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Joshua E. Bidzinski
SWANSON MARTIN & BELL LLP
jbidzinski@smbtrials.com

Steven E. Danekas
SWANSON, MARTIN & BELL, LLP
sdanekas@smbtrials.com

James M. Hinshaw
BINGHAM GREENEBAUM DOLL LLP (Indianapolis)
jhinshaw@bgdlegal.com

Andrew Bentley Janutolo
GOODIN ABERNATHY LLP
ajanutolo@goodinabernathy.com

---

[3] Because Defendants are entitled to summary judgment on this basis, the Court does not address their arguments that the rifle and ammunition were not defective.

Andrew M. Pendexter
BINGHAM GREENEBAUM DOLL LLP (Indianapolis)
apendexter@bgdlegal.com

Troy Kevin Rivera
NUNN LAW OFFICE
troyr@kennunn.com